IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WAYDE ALVIN HESLOP<br>      Petitioner,<br>v.<br><br>RONALD HUTCHINSON, et al.<br>      Respondents. | \*<br><br>\*<br><br>\*<br>\*\*\* | CIVIL ACTION NO. WMN-04-1181 |

## **MEMORANDUM**

Petitioner filed this counseled Petition for writ of habeas corpus relief under 28 U.S.C. §2254, challenging his 1999 convictions in the Circuit Court for Prince George's County on counts of first degree murder, second degree murder, conspiracy to commit first degree murder, and use of a handgun in the commission of a felony or crime of violence. Currently pending before the court are the Petition and Respondents' Answer and exhibits. Paper No. 1 and Paper No. 10, Exs. 1-29. Upon review of the pleadings, the court finds no need for an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2); Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*. For reasons that follow, the Petition is hereby denied.[1]

### **I**. **PROCEDURAL HISTORY**

On May 15, 1998, Petitioner was indicted on charges of murder, conspiracy to commit murder, and use of a handgun in the commission of a felony related to the April 14, 1998 killing of Michael McRoy at a Cypress Creek Drive apartment in Hyattsville, Maryland. Paper No. 10, Exs. 1-3. At a pretrial motions hearing, the State moved to consolidate Petitioner's cases. *Id*., Ex. 2. The motion was granted. In addition, Petitioner's motions to suppress statement, physical evidence,

---

[1] The court observes that: (i) Petitioner is not proceeding pro se; (ii) counsel for Petitioner provided him representation on collateral review in the Circuit Court for Prince George's County; and (iii) counsel has not moved to be provided a copy of Respondents' exhibits. Consequently, the court did not direct the record be provided to counsel under *Thompson v. Greene*, 427 F.3d 263 (4th Cir. 2005).

and identification were heard and denied by Circuit Court Judge G. R. Hovey Johnson. Paper No. 10, Exs. 2-3. Petitioner was represented at the pretrial hearings and at trial by Robert C. Bonsib. Assistant State's Attorney John Maloney appeared for the State. On February 8, 1999, the case proceeded to trial before a jury, with Judge Johnson presiding.[2] *Id*., Exs 4-8. In reviewing Petitioner's conviction the Court of Special Appeals of Maryland made the following proffer:

> [Petitioner] and Michael McRoy resided in neighboring apartments. On April 13, 1998, McRoy's apartment was burglarized. Three handguns, a shotgun, two safes containing $24,000.00 in cash, and various other items were taken. The following day, three men approached McRoy's apartment: Jamal Higgs, Carlos Mayberry, and Carlton Applewhite. One of the three men knocked on the door; when McRoy answered it and walked into the hallway, he was shot several times and killed.
>
> At [Petitioner's] trial at issue was the extent of [Petitioner's] participation in the events culminating in the shooting. After a four-day trial the jury found [Petitioner] guilty of murder, conspiracy to murder, and the use of a handgun in the commission of a crime of violence.[3]

Paper No. 10, Ex. 12 at 1-2.

Having been convicted on counts of conspiracy to commit murder in the first degree, second degree specific intent murder, first degree premeditated murder, and use of a handgun in the commission of a felony or crime of violence, Petitioner was sentenced on April 4, 1999.[4] *Id*., Ex.

---

[2] Judge Maureen H. Lamasney took the jury verdict on February 12, 1999. Paper No. 10, Ex. 8.

[3] It was the State's theory that: (i) McRoy believed that Petitioner was involved in the burglary on April 13, 1998, and attempting to contact Petitioner through Mazie Fairfax Heslop, Petitioner's then-girlfriend; (ii) on April 14, 1998, Petitioner gathered a group of people, including Jamal Higgs, Carlos Mayberry, and Carlton Applewhite, distributed guns, and initiated an agreement among individuals by direction, coercion and/or threats to "take out" McRoy before McRoy took action against him for the burglary; (iii) several of those individuals, including Petitioner, drove to McRoy's apartment in at least three separate cars; (iv) Higgs, Mayberry, and Applewhite left the cars, knocked on McRoy's door, fatally shot him, and got back in the cars; and (v) the individuals met up after the shooting, at which time Petitioner threatened a number of individuals with harm if they did not remain silent or give him an out-of-state alibi.

[4] Prior to sentencing, Judge Johnson heard counsel's motion for a new trial. Mr. Bonsib asked the court to reconsider its rulings and in particular reconsider its decision to restrict the scope of Carlton Applewhites's cross-examination as to prior bad acts. Paper No. 10, Ex. 9. Judge Johnson denied the motion. *Id*.

9. Judge Johnson merged the second degree specific intent murder into the first degree premeditated murder and sentenced Petitioner to life.  Paper No. 10, Ex. 9 at 26.  Petitioner was then sentenced to a consecutive life term on the conspiracy conviction.  *Id*.  Finally, Judge Johnson sentenced Petitioner to a twenty-year term on the handgun conviction, to be served consecutive to the second life term.  *Id*.

As was his right, Petitioner filed an appeal with the Court of Special Appeals of Maryland, claiming trial court error in: (i) refusing to permit the defense to impeach Carlton Applewhite's credibility on the basis of a prior conviction for crack cocaine trafficking; (ii) permitting improper closing argument; (iii) impermissibly restricting the cross-examination of the State's key witnesses; (iv) refusing to propound jury instructions requested by the defense; and (v) admitting testimony that Petitioner attempted to hide from the police where that testimony was not based upon the personal knowledge of the witnesses.  *Id*., Ex. 10.  On December 30, 1999, the Court of Special Appeals affirmed the criminal judgment by unreported opinion.  *Id*., Ex. 12.  The petition for writ of certiorari was denied by the Court of Appeals of Maryland.  *Id*., Ex. 1.

Petitioner filed a pro se petition for post-conviction relief.  *Id*., Ex.14.  He raised the following claims:

1. Trial counsel was ineffective for failing to investigate Petitioner's claims prior to trial;

2. The State knowingly violated discovery by failure to disclose exculpatory evidence concerning deals made with co-defendants to testify against Petitioner; and

3. The State violated due process standards by allowing false testimonies to go uncorrected.

*Id*.

In his amended post-conviction petition filed by counsel, Petitioner claimed that the State violated due process under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Napue v. Illinois*, 360 U.S. 264 (1959), when it: (i) failed to disclose the fact that four co-defendants who testified for the State had pending plea agreements dependent upon their testimony at Petitioner's trial;[5] (ii) solicited deceitful statements from the co-defendants;[6] and (iii) failed to correct the co-defendants "ostensibly perfidious" testimonies regarding the benefits they were receiving from their testimonies. Paper No. 10, Ex. 15. Petitioner further argued that trial counsel was ineffective for failing to conduct an adequate investigation and to call important witnesses, e.g. Jamal Higgs, Carlos Mayberry, and Mezey Fairfax Heslop.[7] *Id*.

---

[5] Petitioner argued that the State ordered pre-plea pre-sentence investigation reports as to Carlton Applewhite, Tracey Andrews, Antonio Gibson, Tyrone Patterson, and Jamal Higgs, but failed to disclose this information to Petitioner's counsel. Paper No. 10, Ex. 16 at 5. He further claimed that defense counsel failed to check the available public records with regard to these pre-plea reports for purposes of the cross-examination of these witnesses. *Id*., Ex. 16 at 5-6

[6] During the course of the post-conviction hearing counsel also claimed that a *Brady* violation occurred when Assistant State's Attorney Maloney did not provide Mr. Bonsib a copy of Carlton Applewhite's conviction in North Carolina. Paper No. 10, Ex. 16. In his post-hearing memorandum, Petitioner further alleged that the State made improper and misleading statements during closing arguments that "none of the co-operating witnesses had any deals." *Id*., Ex. 21 at 13.

[7] During the course of the post-conviction hearing, counsel further elucidated on the Sixth Amendment grounds. He asserted that Mr. Bonsib's representation fell below the standard of care due to his: (i) failing to check the state court docket for evidence of the pre-plea pre-sentence investigations so they could be used on cross examination to show bias of co-defendant witnesses and to "take away the sting of the fact that they had orders of immunity"; (ii) failing to introduce the opening statement of the State in co-defendant Carlos Mayberry's November, 1998 trial in which Assistant State's Attorney John Maloney indicated that Mayberry was the trigger man who shot Michael McRoy; (iii) failing to call Jamal Higgs as a witness at Petitioner's trial, which would have resulted in Higgs invoking his Fifth Amendment rights and would have allowed Mr. Bonsib to introduce the Higgs's testimony from the Mayberry trial, which would have contradicted the testimony of Carlton Applewhite that Higgs was the trigger man; and (iv) failing to research or investigate whether Applewhite's North Carolina conviction was admissible for impeachment purposes. Paper No. 10, Ex. 16.

A post-conviction hearing was held before Prince George's County Circuit Court Judge Dwight D. Jackson on April 15, 2002.[8] Paper No. 10, Ex. 16. Both Assistant State's Attorney Maloney and defense counsel Bonsib testified. Judge Jackson directed counsel to submit post-hearing memoranda. *Id.*, Ex. 16 at 157. Memoranda and proposed findings of fact and conclusions of law were submitted. *Id.*, Ex. 21-24. In a comprehensive opinion issued on March 28, 2003, Judge Jackson denied post-conviction relief. Paper No. 10, Ex. 25. Petitioner filed a motion to alter or amend judgment, arguing that Judge Jackson applied the wrong standard of proof as to all ineffective assistance of counsel claims and erroneously evaluated the *Brady* claim regarding the disclosure of the prior drug trafficking conviction of Carlton Applewhite. *Id.*, Ex. 26. The motion to alter was denied on May 23, 2003. *Id.*, Ex. 27. In addition, Petitioner filed a counseled application for leave to appeal, which was denied by the Court of Special Appeals on March 11, 2004. *Id.*, Exs. 28 & 29.

The instant § 2254 Petition raises the following grounds:

1. The State violated Petitioner's right to due process by concealing impeachment information in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and failing to correct the perjured testimony by its witnesses in violation of *Napue v. Illinois*, 360 U.S. 264 (1959);[9] and

2. Petitioner received ineffective assistance of trial counsel because counsel failed to introduce the State's contradictory opening statement from co-defendant Carlos Mayberry's trial and failed to impeach co-defendant Carlton Lee Applewhite with his prior criminal convictions.

Paper No. 1.

---

[8] A number of exhibits were introduced at the hearing including, but not limited to, the plea hearings of Tyrone Patterson and Carlton Applewhite and the plea and sentencing hearings of Traci Andrews and Antonio Gibson. Paper No. 10, Exs. 17-20.

[9] Petitioner claims that the State concealed from the defense and the jury the fact that it had agreed to negotiate favorable plea agreements after co-defendants Antonio Gibson, Tracie Andrews, Tyrone Patterson, and Carlton Lee Applewhite testified at Petitioner's trial and that plea disposition dates had been set for a date after Petitioner's trial. Petitioner further claims that the State did nothing to correct its witnesses' testimony that he or she received no benefit by testifying by presenting misleading closing argument. He asserts that shortly after trial the State reduced the charges against each of the co-defendants who testified and asked the court to agree to bind itself to lenient sentences for all co-defendants.

## II. THRESHOLD CONSIDERATIONS

### A. Exhaustion of State Remedies

Before a petitioner may seek habeas relief in federal court, he must exhaust each claim presented to a federal court by pursuing available state court remedies. This exhaustion requirement is satisfied by "fairly presenting" the claims in each state court so as to obtain review in the highest state court with jurisdiction to consider the claims. *See* 28 U.S.C. §2254(b) and (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-49 (1999); *Gray v. Netherland*, 518 U.S. 152, 161-65 (1996); *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004). As Petitioner no longer has any state direct appeal or post-conviction remedies available to him with respect to the claims before this court, his claims will be considered exhausted for the purpose of federal habeas corpus review.

### B. Statute of Limitations

There is no contention that the Petition is time-barred pursuant to 28 U.S.C. §2244(d).

### C. Procedural Default

There is no argument that the grounds set out herein are procedurally defaulted.

## III. Standard of Review

Because this petition was filed after April 24, 1996, it is to be decided under amendments to the habeas corpus statutes contained in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Woodford v. Garceau*, 538 U.S. 202, 207 (2003); *Beck v. Angelone*, 261 F.3d 377, 380 n.3 (4th Cir. 2001). AEDPA modified the federal court's role in habeas proceedings in order to prevent federal "retrials" and to ensure that state court convictions are given effect to the extent possible under law. *See Bell v. Cone*, 535 U.S. 685, 693 (2002). Pursuant to statute, a federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits:

>1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
>2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Section 2254(d) is a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), "which demands that state court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curium*). In *Williams v. Taylor*, 529 U.S. 362 (2000), Justice O'Connor explained that a state court decision is "contrary to" clearly established federal law, when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id*. at 412-413. A state court decision is based on an "unreasonable application" of clearly established federal law when "the state court identifies the governing legal rule [from the Supreme Court's cases] but applied it unreasonably to the facts of a particular case," *id*. at 407-08, or "applies a precedent in a context different from the one in which the precedent was decided and one to which extension of the legal principle of a precedent in a context where such failure is unreasonable." *Green v. French*, 143 F.3d 865, 870 (4th Cir. 1998), *overruled on other grounds by Williams*, 529 U.S. 362. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams v. Taylor*, 529 U.S. at 409-410. A habeas corpus writ may not issue simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. *Id*. at 411; *see also Robinson v. Polk*, 438 F.3d 350, 355 (4th Cir. 2006).

Further, federal courts give great deference to a state court's factual findings. *See Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct absent clear and convincing evidence to the contrary. The applicant has the burden of rebutting the presumption of correctness. A decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

### IV. PETITIONER'S CLAIMS

#### A. Violation of Due Process

Petitioner asserts that the State concealed impeachment information in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and failed to correct the perjured testimony by its witnesses in violation of *Napue v. Illinois*, 360 U.S. 264 (1959).[10] These grounds are premised on Petitioner's claims that: (i) the State had entered into an agreement to negotiate favorable plea agreements with co-defendants Antonio Gibson, Tracie Andrews, Tyrone Patterson, and Carlton Lee Applewhite in exchange for their testimony at Petitioner's trial; (ii) plea disposition dates had been set for Gibson, Andrews, Patterson, and Applewhite after Petitioner's trial; (iii) the State concealed the agreements from the defense and the jury; and (iv) the State did nothing to correct its witnesses' testimony that he or she received no benefit by testifying.

The post-conviction court examined these claims under *Brady, Bagley, Giglio,* and *Napue* and found them to be without merit. Judge Jackson offered the following analysis and findings:

> Petitioner alleges that the State violated the rules of *Giglio v. United States*, 405 U.S. 50, 154-55 (1972) and *Napue v. Illinois*, 360 U.S. 264, 269 (1959) when it failed to correct the testimony of Gibson, Andrews, Patterson, and Applewhite that they were receiving no

---

[10] *See also United States v. Bagley*, 473 U.S. 667 (1985); *Giglio v. United States*, 405 U.S. 150 (1972).

> benefits from their testimony against Petitioner. Petitioner also alleges that the State violated the rules of *Giglio* and *Napue* during closing argument when the prosecutor stated there were no deals with any of the co-operating witnesses. (Tr. 2/11/99, at p. 4-86). Petitioner also maintains that the State violated the rule of *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny in failing to turn over exculpatory evidence prior to trial. Specifically, the State failed to disclose to Petitioner's trial counsel: (a) the soon to be reached plea agreements with Gibson, Andrews, Patterson, and Applewhite; (b) the pending plea disposition dates as to all co-operators that were to occur **shortly after** Petitioner's trial; and (c) the fact of Carlton Applewhite's prior felony convictions in North Carolina.
>
> Petitioner further argues that in the instant case, since the State's case was heavily dependent upon the four co-operators and the jury deliberated for a full day before they reached their verdict, the *Giglio/Napue* violations cannot be deemed to be harmless error beyond a reasonable doubt. See, *Idaho State Bar v. Warrick*, __ P.2d ____, 2002 WL 44154 (Idaho 2002) [finding suspension of attorney for thirty (30) days for not correcting false/misleading testimony of co-operator/key State's witness was appropriate sanction]; *Bragan v. Morgan*, 791 F. Supp. 704 (M.D. Tenn. 1992); *Duggan v. State*, 778 S.W.2d 465, 468-469 (Tex. Cr. App. 1989); *United States v. Bigeleisen*, 625 F. 2d 203 (8th Cir. 1980).
>
> Petitioner argues that the State had a duty to disclose to trial counsel for Petitioner the fact that all four witnesses were certainly likely to plead guilty and that they had disposition dates scheduled for the entry of guilty pleas shortly after Petitioner's trial. Petitioner contends that this information was exculpatory in nature, as it could have been used to impeach all four witnesses at trial (bias/motive).

Paper No. 10, Ex. 25 at. 13-14.

The State had argued that: (i) the request for a pre-plea pre-sentence investigation ("PSI") was not impeaching evidence that the State failed to disclose to Mr. Bonsib that was material; (ii) there was no plea agreement, formal or informal, at the time of Petitioner's trial regarding Gibson, Andrews, Patterson, and Applewhite; (iii) all four witnesses were compelled to testimony under a grant of immunity; (iv) the order of the pre-plea PSI was a matter of public record that had been communicated to Petitioner's counsel; (v) none of the PSIs were completed prior to Petitioner's trial; (vi) as Gibson, Andrews, Patterson, and Applewhite's testimony was neither perjurious nor misleading, it was under no obligation to correct the testimony and Mr. Maloney's closing comment on the evidence was not misleading to the jury. Paper No. 10, Ex. 25 at 14-17 & Exs. 16 & 23.

9

Judge Jackson concluded that the State's position was confirmed by the court record during opening and closing arguments which discussed the bias of the cooperators and their credibility in light of their compelled testimonies and their expectations for their cooperation. *Id.*, Ex. 25 at 16-17. He further found that:

> [T]he defense has failed to show the materiality of the introduction of the docket entries [of the ordering of the PSIs] in light of the fact that the jury was aware that the witnesses had all been given immunity for their testimony. The Petitioner must establish the suppressed evidence is material. Not all instances of suppression of evidence warrant a new trial. Instead, the suppressed evidence must be material to the guilt or punishment of the accused in order to violate due process and entitle the defendant to a new trial. Therefore, Petitioner's argument fails.

*Id.*, Ex. 25 at 17.

The undersigned has carefully scrutinized Judge Jackson's decisions in light of the jury trial and post-conviction proceedings and shall not disturb his findings under §§ 2254(d) & (e). The post-conviction court correctly applied Supreme Court precedent to the evidence and concluded that there was no due process violation.

Under *Brady* "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecutor." *Brady v. Maryland*, 373 U.S. at 87. In order for a failure to disclose exculpatory or favorable evidence to rise to a constitutional level, there must be a reasonable probability that the results of the proceeding would have been different had the evidence been disclosed. *See United States v. Bagley*, 473 U.S. 667, 682 (1985). Moreover, a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the outcome at trial. *See United States v. Bagley*, 473 U.S. at 678; *United States v. Agurs*, 427 U.S. 97, 103 (1976); *accord Napue v. Illinois*, 360 U.S. 264, 265-72 (1959).

There is no dispute that the State had ordered pre-plea PSIs for Gibson, Andrews, Patterson, and Applewhite and did not communicate the action to Petitioner's counsel.[11]  The court nonetheless finds no due process violation. There is no evidence that the pre-plea PSIs for Gibson, Andrews, Patterson, and Applewhite were completed or that the cooperators had entered into specific plea agreements at the time of Petitioner's trial.  Gibson, Andrews, Patterson, and Applewhite's testimony was not perjurious and Mr. Maloney's closing statements were not misleading.  Further, as noted by Court of Special Appeals on direct appeal, defense counsel was permitted to extensively examine Gibson, Andrews, Patterson, and Applewhite before the jury with regard to their meetings with the prosecutor and the fact that: (i) their testimony was provided under agreed immunity; (ii) as Petitioner's co-defendants, they were facing substantial criminal penalties if convicted; and (iii) they were being cooperative in hopes of favorable consideration as a result of their testimony.  *See* Paper No. 10, Ex. 12 at 17-23.

Accordingly, I find that Judge Jackson decision rejecting Petitioner's claims that he was prejudiced by the State's failure to disclose the order of the pre-plea PSIs and by the State's failure to correct perjurious testimony is neither contrary to clearly established federal law as determined by the United States Supreme Court, nor involved an unreasonable application of that law.

**B.  Ineffective Assistance of Trial Counsel**

---

[11] The record indicates that the ordering of the pre-plea PSIs was noted on the criminal case docket entries.

Petitioner claims that he received ineffective assistance, alleging that Mr. Bonsib failed to introduce the State's contradictory opening statement from co-defendant Carlos Mayberry's trial and failed to impeach co-defendant Carlton Lee Applewhite with his prior criminal convictions.

To establish a claim of ineffective assistance of counsel, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).  With regard to the first prong of this test, this court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690.  All circumstances are to be considered, and this Court's scrutiny of counsel's conduct must be "highly deferential." *Id*. at 688-89.  Even if counsel committed a professionally unreasonable error, relief can be granted only if "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

Upon reliance on the *Strickland* standard, the post-conviction court examined these claims and found them to be without merit.[12]  As to Petitioner's claim that Mr. Bonsib was ineffective for failing to move for the admission of Mr. Maloney's opening argument in the earlier trial of co-defendant Mayberry, Judge Jackson noted the following:

> Petitioner alleges that trial counsel provided ineffective assistance of counsel by failing to obtain and use the transcript of the opening statement of John Maloney, Esq. In the Carlos Mayberry trial (See, Petitioner's Post-Conviction Hearing Exhibit No. 1, at pages 1-30, 39).

---

[12] Judge Jackson gave each Sixth Amendment claim scrutiny under the proper *Strickland* analysis. Each ground was examined under the appropriate facts and legal standard in an encapsulated manner. The court duly notes that the "preponderance of the evidence" phrasing set out in Judge Jackson's "Conclusion" is inconsistent with his prior legal analysis and findings and does not reflect the correct standard under case precedent, but finds this error harmless for purposes of § 2254(d) review.

> Petitioner argues that the transcript of the opening statement of John Maloney, Esq., shows the State's switching of its theory of the case B Carlos Mayberry being the shooter in his trial and Jamal Higgs being the shooter in Petitioner's trial. It is Petitioner's allegation that trial counsel's failure to highlight this change in the State's theory prejudiced his defense because it would have gone to create reasonable doubt and would have been admissible as statements of an agent of a party opponent party under United States v. Orena, 32 F.3d 704, 716 (2d Cir. 1994); United States v. Salerno, 937 F.2d 797, 811 (2d Cir. 1991) and based on Dugan v. EMS Helicopters, 915 F.2d 1428 (10th Cir. 1990), see also, Md. Rule 5-803(a)(3) or (4).

Paper No. 10, Ex. 25 at 20.

Judge Jackson further noted that:

> It is the State's position that in both trials, the State asserted the same theory regarding the Petitioner's involvement and responsibility. The State argues that their theory against Petitioner was not based on who actually pulled the trigger on the gun that killed the victim but that Petitioner was responsible for bringing together and threatening others in an incident that resulted or was likely to result in an aggressive confrontation or death of the victim.
>
> The Court finds, at Petitioner's trial, the jury had to determine the culpability of Wayde Heslop for the murder of Michael McRoy not whether it was his coconspirator Jamal Higgs or Carlos Mayberry who pulled the actual trigger of the gun used to result in the death of the victim. Additionally, Petitioner has failed to show how the introduction of the opening statements would have altered the jury's verdict. Therefore, Petitioner has not proven that trial counsel's failure to introduce the opening statements was ineffective assistance of counsel.

*Id*., Ex. 25 at 21-22.

Next, with regard to Petitioner's claim that Mr. Bonsib provided ineffective assistance due to his failure to obtain a certified copy of the North Carolina criminal conviction of witness Carton Applewhite, the post-conviction court said the following:

> Petitioner argues that trial counsel failed to adequately investigate the prior felony conviction of Carlton Applewhite. Additionally, Petitioner argues that trial counsel's failure to adequately investigate continued after he learned of Carton Applewhite's prior felony conviction. Petitioner cites that during the trial Mr. Bonsib failed to ask what county the conviction occurred, Mr. Applewhite's date of birth, and failed to seek the prior record by making calls to N.C. court officials. It is Petitioner's contention that with due diligence Mr. Bonsib could have obtained the impeachment evidence, including certified copies of the prior convictions in 93 CR 068805 and 068806.
>
> As reference to support his contention that trial counsel's actions constitute ineffective assistance of counsel, Petitioner cited Strickland v. Washington, stating that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. 668, 691 (1984). Therefore, as Petitioner

> alleges, trial counsel's failure to properly investigate in this case was ineffective and Petitioner was prejudiced.
>
> At Petitioner's trial, trial counsel wanted to use Applewhite's prior conviction to impeach the witnesses' credibility. However, the trial court did not allow it because trial counsel did not offer a certified copy of the prior conviction to the trial court as is required in order to use the conviction for impeachment. The State finds that trial counsel requested the State to provide him with any information the State had regarding prior convictions of the witnesses. It is the State's position that although trial counsel could have made a search of the public records, trial counsel relied upon his request to the State. The State responded to that request based on the information the State had in its files. The State ran a record check and confirmed from the witness his date of birth. The record check did not reveal any convictions for the witness.
>
> Counsel has a duty to investigate the facts and whether he conducted an adequate investigation is measured by the reasonableness test. *Harris v. State*, 303 Md. 685, 717 (1985); *Kimmelman v. Morrison*, 477 U.S. 365 (1986). However, in order to establish a claim of ineffective assistance of counsel the Petitioner must not only prove that trial counsel's representation fell below an objective standard of reasonableness but show that he was prejudiced by the error.
>
> In this case, Petitioner has failed to show he was actually prejudiced, *i.e.*, but for counsel's representation, the result of the proceeding would have been different." The witnesses' credibility had already been placed into question through the cross-examination of the witness. The record shows that trial counsel vigorously attacked the witnesses' credibility through his prior inconsistent statements to the police, TIII-37; his bias against the defendant for turning him into the police, TIII-34; his friendship with a codefendant Carlos Mayberry, TIII-36; pending charges in the District Court of Prince George's County for second degree assault and wearing and carrying or transporting a handgun, TIII-71; and his belief that his testimony may impact how the State evaluates his case, TIII-72-74. Additionally, the State's case was overwhelming as to the Petitioner's guilt. See, State's pretrial memorandum and the transcripts of the trial.

Paper No. 10, Ex. 25 at 24-26.

Judge Jackson's legal and factual findings comport with § 2254(d) & (e) and shall not be overturned. Based upon this court's review of the exhibits, particularly the trial and post-conviction hearing transcripts, the court finds that the post-conviction court correctly applied Supreme Court precedent and assessed the supporting record evidence.

The State did not pursue its case against Petitioner as the trigger man who killed Michael McRoy. The foundation of the State's case against him was that he brought Applewhite, Higgs, Mayberry and others together, passed out weapons, and through direction and threats precipitated

14

the event that resulted (or was likely to result) in an hostile confrontation or the death of McRoy. Petitioner asserts that Mr. Bonsib should have introduced Mr. Maloney's opening argument statement at the Mayberry trial to show that the State had switched its theory as to whether it was Higgs or Mayberry who shot McRoy. He has not, however, proved that Mr. Bonsib's action (or inaction) constituted deficient performance or that the introduction of the statement would have caused the jury to reach a different decision.

At Petitioner's trial it was brought to counsel's attention that Carlton Applewhite had an alleged North Carolina drug conviction. Mr. Bonsib wanted to use the alleged 1993 drug trafficking conviction to impeach Applewhite's testimony, but was not permitted to do so by Judge Johnson. Mr. Bonsib was, however, able to bring in information of Applewhite's pending handgun and second degree assault charge which also involved Jamal Higgs and Tonia Andrews. Counsel also was able to bring in impeachment testimony as to: Applewhite's prior inconsistent statements to police; Applewhite's possible bias against Petitioner for assisting local police in his apprehension; Applewhite's friendship with Carlos Mayberry; Applewhite's pending murder, conspiracy, and use of a handgun charges as a co-defendant; and Applewhite's acknowledgment that his minimizing his activities may have an impact on how the prosecutor views his own case. The record shows that Mr. Bonsib mounted a fairly exhaustive attack on Applewhite's credibility. If counsel committed error here with regard to investigation and research into Applewhite's 1993 conviction, Petitioner has failed to show that any error by Mr. Bonsib prejudiced his case.[13]

---

[13] Petitioner has not offered any evidence that but for the alleged deficient performance of trial counsel the result of the trial would have been different. Whether retained or appointed, defense attorneys do not have infinite amounts of money and time with which to investigate and pursue substantially all plausible lines of defense, nor is such conduct realistic or constitutionally mandated. *See Washington v. Watkins*, 655 F.2d 1346, 1356 (5th Cir. 1981) (" 'counsel for a criminal defendant is not required to pursue every path until it bears fruit or until all conceivable hope withers.' ") (citation omitted). The fact that counsel could have conducted a more thorough investigation that might have borne fruit does not establish that the attorney's

## V. CONCLUSION

For the reasons stated herein, the instant Petition for habeas corpus relief shall be denied and the case shall be dismissed with prejudice.   A separate Order follows.

Date:   May 31, 2006

/s/
_____
William M. Nickerson
Senior United States District Judge

---

performance was outside the wide range of reasonably effective assistance.  *See Burger v. Kemp*, 483 U.S. 776, 794-95 (1987).